UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEWAYNE WRIGHT,

   *Plaintiff*,

  v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

   *Defendant*.

Civil Action No. 1:21-cv-02072 (CJN)

## **MEMORANDUM OPINION**

  Plaintiff Dewayne Wright, proceeding *pro se* and *in forma pauperis*, challenges the Social Security Administration's determination that he is not disabled and is therefore ineligible for disability insurance benefits. Before the Court are Wright's Motion for Judgment of Reversal, ECF No. 13, and the Acting Commissioner's Motion for Judgment of Affirmance, ECF No. 14. For the reasons explained below, the Court denies Wright's motion and grants the Acting Commissioner's.

### **I. Background**

**A. Statutory Framework**

  To qualify for disability benefits under Title II of the Social Security Act, a claimant must prove that he has (or had) a "disability" as defined in the Act. 42 U.S.C. § 423(d)(1); *see* 20 C.F.R. §§ 404.315(a)(3), 404.1505(a). A claimant has a disability if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

1

The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). And a claimant must be disabled within the meaning of the Social Security Act prior to his "date last insured." *Kyler v. Kijakazi*, No. 19-cv-03334, 2022 WL 1165859, at *1 (D.D.C. Apr. 20, 2022) (quotation omitted); *see* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.101.

The Administration's evaluation of a disability claim is comprised of a five-step inquiry: (1) whether the claimant is engaged in substantial gainful work; (2) whether the claimant has a severe physical or mental impairment; (3) whether the impairment equates to a listed disability in Appendix 1 to the Commissioner's regulations; (4) whether the claimant is able to return to their past relevant work, despite suffering the impairment; and (5) whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 404.1560(c). Before proceeding to the fourth step, the Administration evaluates the claimant's residual functional capacity (RFC)—"the most" a claimant "can still do" despite his impairment—to determine if the claimant can do his past relevant work or other work. *Id.* §§ 404.1520(a)(4), 404.1520(e), 404.1545(a)(1). If he can, the claimant is not disabled. *See id.* § 404.1520(a)(4)(iv)–(v).

**B.   Factual Background**

Wright's claim for disability benefits stems from a range of alleged psychological and physical impairments. Wright's alleged disability onset date is April 1, 2013, and his date last insured is September 30, 2019. *See* Administrative Record ("AR") at 20, 33, 192. Despite his earlier alleged onset date, the record lacks any documentation of psychological or physical

2

treatment before 2019.

The first documented psychological treatment in the record is dated February 22, 2019, when Wright was treated by psychiatrist Dr. Ajirioghene Igbide. *Id.* at 283–84. Wright reported an extended history of depression but no past treatment for that condition. *Id.* at 283. He also reported substantial alcohol use; at that point, he was drinking two to three half-pints of tequila daily and would "[e]xperience withdrawals during periods of abstinence including several episodes of withdrawal-associated seizures." *Id.* Dr. Igbide diagnosed Wright with major depressive disorder as well as alcohol use disorder and prescribed him an antidepressant medication. *Id*. at 284. Wright continued to see Dr. Igbide for medication management appointments through August 2020, and he reported improvements in his mood associated with reduced drinking. *See id.* at 291–98, 373–82. Wright also underwent a consultative examination on September 19, 2019, by Dr. Marisela Gomez, who noted a diagnosis of mental illness but described Wright as showing no evidence of "hallucinations," "delusions," "impaired judgment," or "significant memory impairment." *Id.* at 306–09.

As for his physical impairments, the earliest evidence in the record—and the only evidence from before Wright's date last insured—is from the same examination by Dr. Gomez. Dr. Gomez diagnosed Wright with back pain with radiation into his hips and shoulders, left foot pain, bilateral knee pain and swelling, and high blood pressure. *Id.* at 309.

Wright began treatment for his physical impairments after his date last insured (September 30, 2019). On January 22, 2020, primary care physician Dr. Edwin Williams saw Wright for a physical exam and noted medical conditions including hypertension, hyperlipidemia, arthritis in his right knee, gastro-esophageal reflux disease, depression, Stage 3 chronic kidney disease, and alcoholism. *Id.* at 312–13. Dr. Williams also certified Wright's disability on his application for a

disability parking placard, writing that Wright's mobility was impaired by arthritis of the hips and back. *Id.* at 316. The next month, Dr. Margaret MacKeever diagnosed Wright with rupture of the left posterior tibialis tendon, and Dr. Nicholas Casscells diagnosed Wright with left lumbar radiculopathy and posterior tibial tendonitis in the left leg. *Id.* at 318, 321, 326; Compl. Exs. at 4–5, ECF No. 1-2.

In March 2020, Wright saw nephrologist Dr. Mohammad Khan for treatment related to his chronic kidney disease. AR at 322–24. Dr. Bryan Murtaugh evaluated Wright's lower back and left ankle pain and diagnosed him with left lumbar radiculitis, and at a follow-up visit in May, Dr. Murtaugh also diagnosed Wright with lumbar spondylosis. *Id.* at 360–63.

The following March, physician assistant Casey Baumgardner diagnosed Wright with osteoarthritis with a medial meniscus tear in his left knee. *Id.* at 10. Due to advanced varus tricompartmental degenerative arthritis in his left knee, Wright had knee replacement surgery in April 2021. Compl. Exs. at 16–18. Follow-up reports by Dr. Casscells through July 2021 reflect further diagnoses of gout and pes planovalgus. *Id.* at 8–10.

Finally, in February 2022, Dr. Esperanza Guillermety performed tests due to Wright's complaints of numbness in his hands and neck discomfort and assessed bilateral radiculopathies, and Dr. Mark Lin diagnosed Wright with anesthesia of skin, cervical radiculopathy, spondylosis, and monoclonal gammopathy. Pl.'s Mot. J. Reversal ("Pl.'s Mot.") Exs. at 1–4, ECF No. 13-1.

**C.   Procedural History**

Wright filed a protective worksheet on April 30, 2019, and a disability insurance benefits application on May 2, 2019. AR at 162–68. He reported the following conditions: depression; back injury; inability to stand for too long; arthritis; ankle injury; emotional disturbance; and weight loss due to lack of appetite. *Id.* at 196. The Administration denied Wright's application

4

on January 13, 2020, and later denied his request for reconsideration. *Id.* at 103–11.

Wright then requested a hearing before an administrative law judge and reported changes to his medical conditions, including hallucinations; poor sleep; forgetfulness; anxiety; obsessive-compulsive disorder; post-traumatic stress disorder; chronic kidney disease; back, knee, and leg pain; stiffness and muscle spasms in his neck; and left knee and ankle swelling. *Id.* at 112, 214–21, 224–32. On November 13, 2020, a hearing was held before an ALJ, who reviewed evidence in the record and heard testimony from Wright and a vocational expert. *Id.* at 20, 38–77.

The ALJ issued his decision on December 11, 2020. *Id.* at 17–33. The ALJ determined that, although Wright exhibited severe impairments of substance use disorder, depression, and unspecified arthropathies, he did not have an impairment or combination of impairments that met or equaled the severity of a listed disability under the Act's regulations. *See id.* at 23–26. The ALJ found that the remaining impairments—hypertension, hyperlipidemia, left ankle injury, back injury, arthritis, knee pain and swelling, chronic kidney disease, anxiety, obsessive-compulsive disorder, post-traumatic stress disorder, and muscle spasms in his neck—were either not severe or lacked objective medical evidence. *Id.* at 23–24. The ALJ further concluded that Wright retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b); that he was capable of performing his past relevant work as a messenger/outside deliverer as well as other work; and that overall, he was not disabled prior to his date last insured. *Id.* at 26–33. The Appeals Council denied Wright's request for review on June 13, 2021. *Id.* at 1–4.

On July 23, 2021, Wright filed this suit, seeking review of the Administration's disability determination. *See* Compl., ECF No. 1. Among the attachments to his complaint were certain medical records, including the records of his visits to Dr. Casscells in February and March of 2020, and again in June and July of 2021; a follow-up visit with Dr. Williams in July 2021; and records

5

reflecting his knee surgery in April 2021 and related follow-up later that year.  Compl. Exs. at 4–22.  Wright alleged in a supplemental filing to his complaint that he suffers from arthritis, joint pain, and back pain; that he recently had knee replacement surgery on his left knee due to arthritis; that he might need knee replacement surgery on his right knee; and that he has a cyst on his right thumb that may need to be removed.  Pl.'s Suppl., ECF No. 3.

Wright then filed his Motion for Judgment of Reversal.  *See* Pl.'s Mot., ECF No. 13.  Along with the motion, he filed medical records from his visits with Dr. Guillermety and Dr. Lin in February 2022.  The Acting Commissioner filed her Motion for Judgment of Affirmance and opposed Wright's motion, arguing that substantial evidence supports the ALJ's determination that Wright was not disabled before his date last insured.  *See* Def.'s Mot. J. Affirmance ("Def.'s Mot."), ECF No. 14; Def.'s Mem., ECF No. 15.  The Court then issued an order reminding Wright of his deadline to file, in accordance with the existing scheduling order, ECF No. 12, his opposition to the Acting Commissioner's motion and his reply in support of his own motion.  *See* Order, ECF No. 16.  The order also advised Wright that "[t]he Court's local rules require a party opposing a motion to serve and file a memorandum of points and authorities" by the specified deadline, "or the court may treat the motion as conceded."  *Id.* at 1 (citing LCvR 7(b)).  It further stated that "any unopposed arguments a defendant has advanced in support of its motion may be treated as conceded."  *Id.*  Despite this notice, Wright did not file any additional briefs, nor has he otherwise participated in this matter.

## II. Legal Standards

If an individual seeks judicial review of a final decision of the Commissioner of Social Security, the district court "sits in what is essentially an appellate role when it reviews the Commissioner's disability determination."  *Pond v. Kijakazi*, No. 21-cv-912, 2023 WL 3816687,

6

at *2 (D.D.C. June 5, 2023) (quotation omitted). Review occurs "under the familiar substantial evidence standard." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021); *see* 42 U.S.C. § 405(g). "The Commissioner's determination must be based on substantial evidence in the record and correctly apply the relevant legal standards." *Saunders*, 6 F.4th at 4 (quotation and brackets omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—it "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (quotations omitted).

When seeking judicial review, "the plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). The Court must also apply the harmless-error rule, meaning that even if it "perceive[s] error," it "will affirm the Commissioner's decision unless the error is prejudicial." *Saunders*, 6 F.4th at 4.

### III. Analysis

The grounds on which Wright seeks reversal of the Acting Commissioner's disability determination are murky. In the filings that he has submitted to the Court, Wright emphasizes his alleged physical and psychological impairments and stresses that he is "unable to work." Pl.'s Suppl.; Pl.'s Mot. at 1, 3–4. But the Court's role is not to determine for itself whether Wright is disabled. *See Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Instead, it is to assess whether the ALJ's conclusion that he is not disabled is "based on substantial evidence and a correct application of the law." *Id.* This framework "does not grant the district court a roving commission to review ALJ decisions in a vacuum." *Cooper v. Berryhill*, No. 16-1671, 2017 WL 4326388, at *4 (D.D.C. Sept. 28, 2017). For that reason, courts properly limit themselves to addressing only the challenges to the ALJ's reasoning that individuals seeking judicial review actually raise. *See,*

*e.g.*, *Butler*, 353 F.3d at 999–1006 (stating that the plaintiff "raises four challenges to the ALJ's decision" and analyzing each in turn); *see also Cooper*, 2017 WL 4326388, at *4 (faulting the defendant for failing to respond to the "four issues articulated by Plaintiff"). While the substantial evidence standard is "thoroughgoing," the Court's review is no more sweeping than the allegations of error that a plaintiff brings to the Court's attention. *Butler*, 353 F.3d at 999.

Wright's reasons for seeking reversal are even more difficult to parse because of his failure to respond to the Acting Commissioner's motion and opposition (despite the Court's order expressly warning him about the potential consequences of failing to respond), in which the Acting Commissioner thoroughly defended the ALJ's decision under the substantial evidence standard. Because Wright did not articulate any argument as to why the ALJ's decision was *not* supported by substantial evidence in his own motion—and failed to oppose the Acting Commissioner's contention that the substantial evidence standard is satisfied—the Court concludes that Wright has forfeited this argument. In none of Wright's filings did he advance any argument that the ALJ's decision lacked the support of substantial evidence. Deeming arguments forfeited, even where a party is *pro se* and "held to less stringent . . . forfeiture standards," is particularly appropriate where "those arguments entail fact-intensive inquiries." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010); *see also Page v. Berryhill*, 688 F. App'x 7, 9 (D.C. Cir. 2017) ("Because disability cases of this sort are so fact-intensive and fact-dependent, the standard of review poses a high bar to clear in order to overturn the agency's decision.").

The Court is mindful of its duty to liberally construe the filings of *pro se* litigants and to read them as a whole. *See Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014). Though even a liberal reading of Wright's submissions does not point to any particular reason why the ALJ's decision should be reversed, those submissions, including the attachments to his complaint

and motion, suggest to the Court that he may be seeking remand to the Administration on the basis of new medical records that postdate the ALJ's disability determination (although he did not explicitly state as much in any filing). After all, the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). But in the absence of any argument by Wright that the evidence he attached is material to evaluating the extent of his impairments before his date last insured (and because the records were created substantially past his date last insured and therefore are not clearly material on their face), the Court concludes that Wright has not made the showing required to warrant a remand on this basis.

\*   \*   \*

For these reasons, Wright's Motion for Judgment of Reversal is **DENIED**, and the Acting Commissioner's Motion for Judgment of Affirmance is **GRANTED**. An order will issue contemporaneously with this opinion.

DATE: July 10, 2023

_____
CARL J. NICHOLS
United States District Judge

9